MARY E. SCHLICHER et al.

v.

HENRY H. KEELER et ux. et al.

[Filed February 15th, 1901.]

Where a grantor delivers a deed to a stranger as agent of the grantee, to hold till the grantor's death, with no power of control reserved by the grantor, there is a valid delivery, though the grantee had not empowered the stranger to act for him in holding the deed.

*Mr. William M. Lanning,* for the complainants.

*Mr. Erwin E. Marshall* and *Mr. Robert S. Woodruff,* for the defendants.

REED, V. C.

Charles Keeler, the father of the four complainants, died October 21st, 1900, leaving seven children. On October 18th he made a deed to his son Henry of a farm, which deed was left in the hands of the scrivener who drew it, and this deed was recorded the day after the grantor's death. Henry conveyed a one-half interest in the property to his brother George. The bill is filed to compel the defendants to deliver up this deed for cancellation. It charges fraud in procuring the deed and non-delivery thereof.

On the trial counsel for the complainants confined his right to relief to the single ground of non-delivery of the deed. The

facts concerning the execution and custody of this deed are few, and substantially undisputed.

On the morning of October 18th last George Keeler, a son of Charles Keeler, the grantor, called upon Mr. Chamberlain, a lawyer in Trenton, and told him that his father wished him to come up and execute a deed that had been prepared in the office. Mr. Chamberlain, accompanied by George Keeler, went up in the afternoon. They found Charles Keeler sick, in a second-story room. In the presence of Mr. Chamberlain and his sons Lewis and George, Charles Keeler signed the deed. The deed was mainly typewritten, with a blank for the name of the grantee. This blank was filled, by the direction of the grantor, with the name of Henry H. Keeler. After the name had been inserted, Charles Keeler signed his name to the deed and acknowledged it. Mr. Chamberlain says that he handed Mr. Keeler the deed, and told him that he wanted him to make delivery to him (Chamberlain). He says he handed the deed and said to Mr. Keeler, "I want you to deliver this deed to me, as the agent of Henry, the grantee." Mr. Keeler, he says, had the deed, and handed it to him and said, "You will hold it or keep it until the last day." And I said, "I will."

Mr. Devlin (*1 Devl. Deeds (11th ed.*) § *280*) uses the following language:

"Where a grantor executes a deed and delivers it to a third person, to hold until the death of the grantor, the latter parting with all dominion over it, and reserving no right to recall the deed, or alter its provisions, it seems to be settled, by the weight of authority, that the delivery is effective, and the grantee, on the death of the grantor, succeeds to the title. A delivery of this kind may be considered, in effect, an escrow, but differs from that in the fact that a delivery in escrow is dependent on the performance of some event, and not upon the lapse of time."

A large number of cases are quoted by Mr. Devlin in support of the text.

According to Mr. Chamberlain, there was no condition coupled with the delivery to him, no power to recall the deed was reserved by the grantor. By the words used at the time of the delivery of the deed to Mr. Chamberlain the latter took pos-

session, as the agent of the grantee, and not, as in *Peck* v. *Rees,
7 Utah 467,* as agent of the grantor. Nor did it matter whether
Henry had, or had not, empowered Mr. Chamberlain to act for
him in holding the deed. The delivery to Mr. Chamberlain,
with no power of control reserved by the grantor, raised a pre-
sumption of acceptance by the grantee. The leading case in
England upon this kind of delivery is *Garnons* v. *Knight, 5
Barn. & C. 671.* Wynn made a mortgage to Garnons, whom
he owed. He delivered the mortgage to his niece, saying, "Here,
Bess, keep this, it belongs to Mr. Garnons." He again took
the mortgage from Bess, but again returned it to her, saying,
"Here, put this by." Garnons knew nothing of this. Wynn
died. In an action of ejectment, brought by the mortgagee,
the question whether there had been a delivery of the mort-
gage was found in favor of the mortgagee. It came before the
court of king's bench on rule to show cause why a new trial
could not be granted. In his opinion, delivered in the case,
Mr. Justice Bayley proceeded to say: "Sheppard, who is par-
ticularly strict in requiring that the deed should pass from the
possession of the grantor, lays it down that delivery to the
grantee will be sufficient, or delivery to anyone he has author-
ized to receive it, or delivery to a stranger, for his use and to
his behalf."

Again, he says: "*2 Rol. Abr. (K) 24 pl. 7; Taw* v. *Bury,
Dyer 167; Alford* v. *Lea, 2 Leon. 110,* and *3 Coke 27,* are clear
authorities that on a delivery to a stranger for the use, or on
the behalf of the grantee, the deed will operate *instanter,* and
its operation will not be postponed till it is delivered over to or
accepted by the grantee." The passage of *Rol. Abr.* is this:

"That if a man make an obligation to 'I' and delivers to 'B,' if 'I' get
the obligation, he shall have action upon it, for it shall be understood
that 'B' took the deed for him as his servant. *3 H. 6, 26.*"

The rule so laid down by the court of king's bench was ap-
proved by Mr. Justice Van Syckel, in his opinion delivered in
the case of *Jones* v. *Swayze, 13 Vr. 279.* To the same effect
is the law of the State of New York (*Church* v. *Gilman, 15*

*Wend. 656; Hatheway* v. *Payne, 34 N. Y. 92; Fisher* v. *Hall, 41 N. Y. 421; Munoz* v. *Wilson, 111 N. Y. 295, 303; Rosseau* v. *Bleau, 131 N. Y. 177, 183*) and in Massachusetts. *Wheelwright* v. *Wheelwright, 2 Mass. 447, 452; Foster* v. *Mansfield, 3 Metc. 412; Moore* v. *Hazelton, 9 Allen 102; Regan* v. *Howe, 121 Mass. 424.*

The bill must be dismissed.