HARRISON B. SCHULER

*v.*

SOUTHERN IRON AND STEEL COMPANY.

[Decided January 31st, 1910.]

1. The allegations of a bill as to the contents of a document, a copy of which is attached to it, are not controlling; but the document will be read and construed by the court.

2. Every material fact necessary for complainant to prove to establish his right to the relief prayed for must be alleged in the premises of his bill with fullness and particularity.

3. A demurrer to a bill in equity does not admit facts pleaded on information and belief.

4. The court, in considering the sufficiency of a bill in equity, will not accept the conclusion drawn by the pleader, but will determine for itself the legal force of the facts alleged.

5. Where the averments of a bill in equity are ambiguous or capable of two constructions, the one favorable to defendant must be adopted because a pleading must be construed most strongly against the pleader.

6. A complainant in equity who desires to complain of fraud must set forth the facts constituting the fraud, and the mere use of the words "fraud" and "misrepresentation" are insufficient.

7. The price obtained at a sale of assets of a corporation in bankruptcy bought in by the creditors by agreement for reorganization is not conclusive on the value of the assets.

8. A bill by a stockholder of a corporation adjudged a bankrupt who has signed a reorganization agreement to enjoin the carrying out of a reorganization plan involving the formation of a new corporation to take over the assets of the bankrupt and to issue securities and stocks amounting to $27,000,000 (of which $18,830,000 were to be used to take care of security holders, creditors and stockholders, and of which last-named amount $12,773,300 was to be stock), by restraining the issuance of stock in excess of the amount permitted by law, which bill alleged that the statements in the plan of reorganization were false, in that, as shown by an appraisement in the bankruptcy proceedings filed subsequent to the time complainant became a party to the reorganization plan, the value of the property of the bankrupt did not exceed $7,750,000, and which did not allege the value of the property, was insufficient for failing to unequivocally state the value of the property passing to the new corporation as a consideration for stock to be issued against it, since an appraisement in the bankruptcy proceedings is not conclusive on the issue of fraud.

9. Where the entire subject-matter of a trust is to be dealt with, and every person's rights in it are to be affected, all the *cestuis que trustent* are indispensable parties.

---

Heard on bill and demurrer of the Southern Iron and Steel Company.

*Messrs. Edwards & Smith,* for the complainant.

*Mr. Chauncey G. Parker* (with whom was *Mr. William B. Hornblower, Mr. J. Norris Miller* and *Mr. Earle L. Beatty,* of the New York bar), for the demurrant, the Southern Iron and Steel Company.

GARRISON, V. C.

The bill in this suit sets out that the complainant owned stock in a corporation known as the Southern Steel Company, of the par value of $5,206,700, its total outstanding stock being $25,-000,000, par value. That proceedings in bankruptcy were taken against said company, and receivers in such proceedings were appointed on the 24th of October, 1907, and, subsequently, trustees in bankruptcy were appointed on February 3d, 1908. That a reorganization committee was appointed and prepared a plan and agreement of reorganization, and the complainant became a party to such plan and agreement of reorganization.        :

The bill sets forth the pleader's construction of the said plan and agreement; but since a copy thereof is attached to the bill, the allegations of the pleader in this respect are not controlling, but the document itself will be read and construed by the court. *Dick* v. *McPherson* (*Supreme Court, 1908*), *72 N. J. Law (43 Vr.) 332; Dillon* v. *Barnard, 21 Wall. (U. S.) 430; Equitable Life Association Society* v. *Brown, 213 U. S. 25; Bogardus* v. *New York Life Insurance Co., 101 N. Y. 337; Greeff* v. *Equitable Life Asso. Society, 160 N. Y. 19.*

Generally speaking, the plan and agreement was to the following effect: The physical property owned by the Southern Steel Company was set forth; the amount of the bonds, and the different classes of indebtedness, and of outstanding stock of said company, were set forth. The general plan of reorganization was the familiar one of forming a new company and transferring the assets of the old company to such new company, which was to issue a stated amount of securities (in this case, bonds, preferred and common stock) to be used for certain purposes in taking care of the holders of the old securities, creditors and stockholders.

Roughly speaking, it was stated that the outstanding obligations of the old company, including the stock, was over thirty-three millions of dollars; that the securities and stock to be issued by the new company was $27,000,000, of which only $18,-830,000 were to be used for taking care of the existing security holders, creditors and stockholders, and of which last-named amount, $12,773,300 was to be stock, common and preferred, and

th... balance of the bonds and stock was to be either sold for cash or held in the treasury for further use.

There is nowhere in the plan and agreement of reorganization any statement of any kind as to the value of the property of the old company, the Southern Steel Company.

The purpose of the bill, which is filed on behalf of the complainant and such others as choose to join him, against the reorganization committee and a corporation formed in this state and called the Southern Iron and Steel Company, is to prevent the carrying out of the reorganization agreement and the issuance of stock by the defendant corporation in pursuance thereof.

To this bill a demurrer is interposed by the Southern Iron and Steel Company.

The claim of the complainant to be entitled to this relief is based upon the argument that the bill shows that the issue of stock provided for in the reorganization agreement (of which approximately twelve million is now to be issued in exchange for existing securities) is for a larger amount of par value than is lawful to be issued by the defendant corporation for the property in question; and that if such stock is issued, the complainant will thereupon become liable to future creditors of the last-mentioned corporation for the difference between what it may be found that the true value of the property was and the par value of the stock issued therefor.

If the situation of the complainant and the demurring defendant is to be viewed in the narrowest way, it may be somewhat difficult to define the nature of the complainant's right as against this demurring defendant. The only relief which he seeks against such defendant is an injunction preventing it from issuing a certain amount of stock for certain property. He is not in the position of those persons who have successfully filed bills in this court and obtained restraint against overissues of stock, because he is not a stockholder of the company which is, according to him, about to create an overissue. The only way in which he becomes a stockholder, or could be held to have analogous rights to those of a stockholder, would be because of the agreement which he had made that the property should be taken over by this company and stock issued therefor to the amount speci-

fied; and in this view he could not complain because the thing complained of would then have been an accomplished fact, and no remedy by injunction would be available. Viewed thus narrowly, the corporation would have a right to say to him:

"You either are not a stockholder and, therefore, have no right to object to the issuance of our stock; or else, you are a stockholder by reason of the issuance of our stock for the property in question, in which event your present application for an injunction is a futility."

But I do not purpose dealing with this case upon any narrow issue of that character, whatever the proper holding thereon may be found to be. I intend to consider this case as if the complainant was complaining because certain property in which he is interested is about, by his own agreement, to be transferred to a New Jersey corporation to be created, to carry out the purposes of the agreement, and his insistment that the agreement in question provides for a larger amount of stock than the value of the property.

I therefore assume, without deciding, that one thus circumstanced, upon a proper showing, would not be held in *pari delicto,* or, even if so held, would still be permitted to apply to the court to prevent the issuance of the stock for the purpose named.

Counsel upon each side of this case have exhibited most commendable industry and great skill and ability in presenting every possible question suggested by the situation; but, in my view, the case turns upon a very simple point, and does not call for a consideration of the numerous important and interesting questions dealt with at such great length by the respective counsel.

The sole injury which the complainant suggests that he may be subjected to is, that in the carrying out of this plan in exact compliance with its terms, and with the agreement that he made therein, he will receive stock to which a liability attaches because issued to a larger amount than is permitted by law.

Before any such question can arise it seems to me entirely clear that he must state clearly and unequivocally in his bill that such is the result of existing facts. He can only do this by a clear, unequivocal statement of the value of the property which is to pass to the new company as consideration for the amount

of stock that is to be issued against it. In no other way can he show on the face of his bill, as he must do, that he has any equity of the character claimed.

As Vice-Chancellor Leaming says in *Hageman* v. *Brown, 73 Atl. Rep. 862* (at *p. 863*) : "There are probably few rules of equity pleadings more firmly established than the requirement that every material fact which it is necessary for a complainant to prove to establish his right to the relief he asks must be alleged in the premises of his bill, with fullness and particularity * * *." *Smith's Arm'd* v. *Wood* (*Vice-Chancellor Van Fleet, 1887*), *42 N. J. Eq.* (*15 Stew.*) *563; Arnett* v. *Welch* (*Court of Errors and Appeals, 1890*), *46 N. J. Eq.* (*1 Dick.*) *543; Ter Knile* v. *Reddick* (*Vice-Chancellor Stevens, 1898*), *39 Atl. Rep. 1062; Brown* v. *Carpenter* (*Chancellor McGill, 1898*), *57 N. J. Eq.* (*12 Dick.*) *23; Schrafft* v. *Wolters* (*Court of Errors and Appeals, 1902*), *63 N. J. Eq.* (*18 Dick.*) *793; Graham* v. *Spence* (*Vice-Chancellor Garrison, 1906*), *71 N. J. Eq.* (*1 Buch.*) *183.*

The only statement in the bill of any facts concerning the matter with which we are dealing, is contained in paragraph 12, in which the complainant says

"that the representations and statements contained in said plan or scheme of reorganization were false and untrue, in that, as shown by an appraisement in said bankruptcy proceedings filed subsequent to the time your orator became a party to said reorganization scheme, the value of the property of said Southern Steel Company and its subsidiary companies does not exceed the sum of $7,750,000, which fact was unknown to your orator at the time he became a party to said reorganization agreement. That subsequently and on or about the twelfth day of April, 1909, as your orator is informed and believes, the property of the said Southern Steel Company, including the stock of the subsidiary companies owned by it, was sold for the sum of $5,110.000 to the defendant William W. Miller, a member of the firm of Hornblower, Miller & Potter, attorneys for the defendants as reorganization committee aforesaid, and said property was bought in by said Miller acting for and on behalf of said reorganization committee, and for the purpose and with the intent of turning the same over to said defendant Southern Iron and Steel Company, all as provided in said reorganization agreement, and for which company said defendant Southern Iron and Steel Company proposes to, and unless restrained by this court will, issue bonds and preferred and common stock in payment therefor to the amount of $27,000,- 000, as provided in said plan."

As to so much of this paragraph as is on information and belief, the demurrer is not an admission of the facts so pleaded. *Trimble* v. *American Sugar Refining Co.* (*Vice-Chancellor Emery*, *1901*), *61 N. J. Eq.* (*16 Dick.*) *340*. So, that even if it were seriously contended, which it was not, that the allegation of what the property brought at a bankruptcy sale was an averment of its value, such fact is not so pleaded in this bill as to be effective on this demurrer.

It was contended on behalf of the complainant that the first part of this twelfth paragraph is an averment that the value of the property of the Southern Steel Company, and its subsiduary companies, did not exceed the sum of $7,750,000. I think it perfectly fair to the complainant to say that he concedes that unless he has averred this fact he has not stated any case for relief. If he does not so concede, I decide without any question that such is the necessity of the situation, and that unless it be found that he has so averred, he has not made out any case for relief.

No charge or statement in general vague form will take the place of an averment of the substantial necessary facts. So, that it is immaterial, if elsewhere in the bill there are statements that an excess of stock is to be issued or that the stock issued will be assessable, and other like general vague conclusions of the pleader. As Chief-Justice Beasley said in *Stephens & Condit Transportation Co.* v. *Central Railroad of New Jersey* (*Supreme Court, 1869*), *33 N. J. Law* (*4 Vr.*) *229*, where the declaration demurred to charged that defendant was "unlawfully" doing this and that, "neither adjectives nor adverbs, no matter how numerous or sonorous, can fill the place of * * * substantial statements" (at *p. 232*) ; and Chief-Justice Gummere, in *Marples* v. *Standard Oil Co.* (*Supreme Court, 1904*), *71 N. J. Law* (*42 Vr.*) *352* (at *p. 353*), said * * * "in considering the sufficiency of the declaration, the court does not accept the conclusion drawn by the pleader, but determines for itself the legal force of these facts," citing *Breese* v. *Trenton Horse Railroad Co.*, *52 N. J. Law* (*23 Vr.*) *250*, and *Clyne* v. *Helmes*, *61 N. J. Law* (*32 Vr.*) *358*. See, also, to the same effect, *Redmond* v. *Dickerson* (*Court of Errors and Appeals, 1853*), *9 N. J. Eq.* (*1 Stock.*) *507; Sullivan* v. *Browning* (*Vice-Chancellor Stevenson*,

*1904), 67 N. J. Eq. (1 Robb.) 891; Equitable Life Association Society* v. *Brown, 213 U. S. 25.*

It will be observed, upon reading the twelfth paragraph of the bill, as quoted in full above, that he first states that the representations and statements contained in the plan or scheme of reorganization

"were false and untrue, in that, as shown by an appraisement in said bankruptcy proceedings filed subsequent to the time your orator became a party to said reorganization scheme, the value of the property of said Southern Steel Company and its subsidiary companies does not exceed the sum of $7,750,000," &c.

As I have before stated, there were no representations and statements contained in the plan or scheme of reorganization concerning the value of the property of the Southern Steel Company; and, therefore, no appraisement (prior or subsequent to the said plan or agreement) of the value of the said property could possibly show that the representations and statements in the said plan or scheme of reorganization were false and untrue in this respect.

But, passing this, it is impossible for me, upon this demurrer, as it was at the time that the bill was presented for a preliminary injunction, to give to this language the effect claimed for it by the complainant.

If the averments of the bill are ambiguous, or capable of two constructions, that one must be adopted which makes in favor of the defendant—the pleading is always construed most strongly against the pleader and in favor of his adversary. *Stephens & Condit Transportation Co.* v. *Central Railroad of New Jersey (Supreme Court, 1869), 33 N. J. Law (4 Vr.) 229; Marples* v. *Standard Oil Co. (Supreme Court, 1904), 71 N. J. Law (42 Vr.) 352; Dick* v. *McPherson (Supreme Court, 1905), 72 N. J. Law (43 Vr.) 332.*

In disposing of the application for preliminary injunction, counsel for the complainant was informed that if a statement, clear and unequivocal in its character, was inserted in the bill averring that the value of the property did not exceed the sum named in this twelfth paragraph, the court would consider the

very important and interesting questions which would then be raised.

The same question which now comes before the court on this demurrer finds, in my mind, the same answer, namely, that it is impossible to give to this language any such force as contended for by the complainant; it is impossible from this language to find that the complainant charges, shows or avers that the value of the property of the Southern Steel Company does not exceed the sum of $7,750,000. All that this paragraph avers in this respect is that the appraisement made in the bankruptcy proceedings shows that the value of the property does not exceed the sum named.

It seems to me to be perfectly clear that the material issue is not what that appraisement shows. The material thing is, what is the value of the property for the purpose a stock issue by a New Jersey corporation?

If the demurring defendant herein should answer this twelfth paragraph by denying that

"the representations and statements contained in the plan or scheme of reorganization were false and untrue in that, as shown by an appraisement in the bankruptcy proceedings, the value of the property did not exceed the sum of $7,750,000,"

an issue would be joined upon a perfectly immaterial matter; and the proof by the complainant that the appraisement was for the sum named, or a lesser sum, would clearly and certainly not entitle him to the relief sought for in this suit. Such proof would not, as before demonstrated, show that the representations and statements in the plan and agreement were false and untrue, because there were no such representations or statements in said plan and agreement, and the proof of the value shown in said appraisement would not show the only thing beneficial to the complainant, namely, that the actual value of the property was less than the stock to be issued for it.

Until the complainant in this suit assumes the responsibility of charging just what the value is, he does not state a case that the defendant is bound to meet, and does not state a case that entitles him to relief in this court.

I think that this complainant is in a similar situation to the one dealt with by Chancellor Williamson in the case of *Philhower* v. *Todd (1855)*, *11 N. J. Eq. (3 Stock.) 54*, where he held the complainant, by refusing to commit himself upon the vital point, had failed to state a case for relief. And the same chancellor, in the case of *Herbert* v. *Scofield (1853)*, *9 N. J. Eq. (1 Stock.) 492*, adverts to the fact that the complainant must state his case with accuracy, and holds that if the bill is so framed as to be disingenuous, it is obnoxious, and deprived the complainant of the benefit of doubts which might otherwise be resolved in his favor.

It is quite clear, in the consideration of the case at bar, that the complainant, as a party to the plan and agreement of reorganization, feared that the same would be carried out, so far as any right to object thereto by him was concerned. It is perfectly apparent that there were no misstatements, misrepresentations or fraud which would permit him to rescind, or to retire from the plan and his agreement. He therefore feared to charge in this bill, as a fact, that the value of the property was less than the amount of the stock to be issued, because if he so committed himself in this suit and was not successful in preventing the plan being carried out, such admission might be used against him in the future, in the event that creditors of the new company should pursue the stockholders for unpaid balances on their stock.

The bill being an injunction bill would be sworn to and might, therefore, be used against the complainant.

If, without committing himself to anything in this respect, and by merely referring to the appraisement made in the bankruptcy proceedings, he could cast the whole burden upon the defendant and obtain a decree either that the value was sufficient to found the stock issue upon, or that it was not, he would have procured protection upon an issue which he never tendered or assumed any responsibility concerning.

As will be observed from the most casual reference to this bill, the complainant assumes no responsibility of proving any fact excepting the appraisement in bankruptcy. He does not assume the responsibility of proving that this was more or less than the

value of the property, or that it had any real relation to the actual value of the property.

Apparently, the pleader's theory was that the entire burden, by this bill, could be shifted to the defendants to prove that the value of the property equaled the amount of the stock about to be issued for it. Without deciding anything more than the case before me, I am clear that one who has joined in an agreement such as this complainant has, is not in a position to cast any burden upon the defendants with whom he has contracted until after he has charged, and thereby undertaken to prove, such facts as make it improper, as to him, to hold him to his agreement and have it carried out.

While the word "fraud" is used in the bill, and the word "misrepresentation," I am utterly unable to perceive their signification or relevancy to the facts charged. I cannot find anything in the plan or agreement which, by any proper use of language, can be said to represent or state the value of the property of the Southern Steel Company, and, consequently, no proof as to its value could possibly show any misrepresentation or misstatement in the said plan or agreement.

It is entirely settled that the mere use of the word "fraud" is futile, and that a complainant who desires to complain of fraud must set forth the facts which he claims constitute the fraud upon him. *Byard* v. *Holmes* (*Supreme Court, 1870*), *34 N. J. Law* (*5 Vr.*) *296; Smith's Administrator* v. *Wood* (*Vice-Chancellor Van Fleet, 1887*), *42 N. J. Eq.* (*15 Stew.*) *567; affirmed, 44 N. J. Eq.* (*17 Stew.*) *603* (*1888*) ; *Davis* v. *Davis* (*Chancellor McGill, 1896*), *55 N. J. Eq.* (*10 Dick.*) *37; Hageman* v. *Brown* (*Vice-Chancellor Leaming, 1909*), *75 Atl. Rep. 862;* see also, *State* v. *Minnesota L. and I. Co., 20 Mont. 198; 50 Pac. Rep. 420; Equitable Life Association Society* v. *Brown, 213 U. S. 25.*

In the case at bar, the complainant, who was a holder of a very large amount of stock in the old company, had every source of information open to him before he went into the agreement. The committee refrains from making any statments of the value of the property, and further explicitly informs all concerned that whatever they have said is not to be taken as if its accuracy

was guaranteed, but is only to be taken as having been obtained from the best sources available to the committee.

The only other thing, besides the agreement in question which has happened, so far as the complainant's bill shows, which has any relevancy at all, is an appraisement in the bankruptcy proceedings and a sale. As to the sale, it cannot be possible that any court will hold that the price obtained at a sale of assets in bankruptcy, bought in by the creditors by agreement, is so conclusive upon the value of those assets that the mere proof of the amount brought at such a sale is conclusive of such value. This is too clear upon reason to require authority, but it has the latter. *Pomeroy* v. *New York Smelting and Refining Co.* (*Vice-Chancellor Emery, 1901*), *48 Atl. Rep. 395.*

Similarly, I cannot believe it possible that a filed appraisement in a bankruptcy proceeding is conclusive proof of the value of the assets thus appraised. Whether it is an instrument of proof at all I do not decide.

And yet this appraisement and sale are the only facts set forth in the bill which in any way affect the vital question involved.

I cannot conceive how, under any proper principles of equity pleading, it would be possible under this bill to raise the only issue which could be beneficial to the complainant. That issue, as above pointed out, is an affirmance upon his part of the fact that property of a certain value is about to have stock of a much larger amount issued for it.

Since the bill, as above stated, utterly fails anywhere to aver what the value of the property is, the issue is not even suggested, much less tendered.

For him to charge or state or show (whichever this bill may be claimed to do) that in a bankruptcy proceeding appraisers, appointed for some purpose in that proceeding, estimated the property as having a certain value, is merely to plead, at most, a portion of his evidence; and is certainly not a pleading of what the actual value is, which is the only thing with which we could be possibly concerned in this suit.

With respect to the responsibility assumed by the complainant under this charge, all that he assumed to do was to produce the

appraisement and prove that it was filed in the bankruptcy proceeding.

In the case of *Brokaw* v. *Brokaw* (*1886*), *41 N. J. Eq.* (*14 Stew.*) *215*, there was a demurrer to the bill. One question sought by the complainant to be raised was whether the defendant executors had neglected to perform a duty enjoined upon them by the will. In dealing with the bill upon this point, Vice-Chancellor Van Fleet said (at *p. 220*) : "The bill, it is true, says that the father complained to the complainant * * * that he was not receiving the support * * * he was entitled to under the will, but this averment * * * does not affirm the truth of any actionable fact. Under an averment in this form, the complainant would not be required to prove that the father had been deprived of anything which the will gave him, but he would maintain the issue tendered by his pleading by simply proving that the father had complained that he was not receiving what he was entitled to. Such proof would, of course, show no right of action. It is an elementary rule of pleading that a bill must state all the facts on which the complainant's right to relief rests with certainty and clearness, and positively." *Story Eq. Pl. § 241.* Surely, the appraisement filed in the bankruptcy case, which could not be subjected to the customary test by cross-examination, could not be held to be conclusive; and yet that is all that the complainant tenders in this case.

Unless, therefore, the complainant could maintain that which seems to me to be an impossible contention, he cannot succeed upon the facts averred.

If he could maintain that because this property was appraised in a bankruptcy proceeding at a certain sum, such sum must, in this court, be taken as conclusive proof of the value of the property, so that an issue of stock by a New Jersey corporation to a larger amount than such sum would be an overissue to the amount of the excess, he might then succeed in this suit. But I have not found, nor was I furnished with any authority for any such principle. And I cannot conceive that any court could reach such a conclusion.

Whatever the functions of the appraisers in bankruptcy may be, and whether their appraisement is evidential or not in other

proceedings, it does not seem to me that it can be reasonable to hold such appraisement to be anything more than evidence. I feel that I would waste time were I to indulge in elaboration with respect to what seems to me to be so plain and clear a proposition.

The vital determining question in this case is whether the complainant has averred, shown or stated that a New Jersey corporation is about to issue more stock than certain property is worth. And the only way he can do that is to show what that property is worth.

Unless the appraisement in the bankruptcy proceedings is conclusive, he has nowhere in his bill charged any facts raising this question. I find that the appraisement in the bankruptcy proceedings is not conclusive; that it may be (although I do not decide that it is) evidential, but it is nothing more than evidential; and therefore the complainant, by merely pleading that, has not pleaded the facts which he must plead to raise the question which he seeks to raise.

Upon this ground, my judgment is clear that the demurrer must be sustained.

The demurrant urged with equal insistence many other grounds.

It insists that this bill is defective because it is brought by the complainant on behalf of himself and others, whereas the charge seems to be a fraud perpetrated upon him. *Chester* v. *Halliard* (*Court of Errors and Appeals, 1882*), *36 N. J. Eq.* (*9 Stew.*) *313.*

If the pleader's apparent theory of his own case were adopted, there would be much in this objection. But, as above pointed out, I do not think that theory can possibly be tenable. I cannot see how, from any of the facts that he alleges, it would be possible to find a fraud perpetrated upon him or upon anyone. The sole cause of complaint which I see it possible to urge, if the facts were properly pleaded, would be that under the law of New Jersey it is against public policy to issue more stock than the value of property paid in for it; and therefore these parties who had agreed to.put in property at a certain price had agreed to do a thing prohibited by the law of New Jersey; and therefore any

one of the parties might appeal to the court to undo such unlawful agreement and prevent its being proceeded with.

In this view of the case, it seems to me that it would not only be proper but necessary to bring in all the parties so that the court could make a binding decree affecting them all.

Another insistment of the demurrant is that this complainant is not in a position to ask for the relief prayed for, even assuming that his bill charges all that it should charge, because what he, in effect, is asking for is rescission, and rescission, under the circumstances, is impossible.

The contention of the demurrant is that the *status quo ante* cannot possibly be restored; and since the complainant is in a similar situation to all the other parties, and has not been the subject of any fraud nor has any concealment been practiced with respect to him, he cannot now have the contract rescinded as to him without the acquiescence of all the others, because it would be impossible to restore him or the others to any position which a court would deem equitable.

It certainly would be extremely difficult to work out any equitable result under the circumstances. Parties owning $33,-000,000 of securities, stock, &c., have joined in this plan, or at least a very large majority have. It contemplated settlements upon agreed bases. It contemplated a sale of the assets and a purchase for the benefit of all, and a revesting of the assets in a new corporation, and an issuance of securities by that corporation in exchange for rights against and securities of the old corporation.

The only remedy in this view of the case would be a completely new agreement, which it seems to me would be practically impossible for the court to make, even if all the parties were before it and the court had jurisdiction to do so. The parties are not before it, since only the reorganization committee and the new company are defendants. If the entire subject-matter of the trust is to be dealt with, and everybody's rights in it are to be affected (as they would have to me to meet the complainant's demand), it seems to be clear that the other *cestui que trustent* are indispensable parties. This latter principle, if it.is applicable, is too familiar to require citation of authorities.

Another insistment is that in reorganizations the courts have held that an overissue does not result if what is done is merely exchanging new securities for old. The following authorities are cited for this: *Pomeroy* v. *New York Smelting and Refining Co.* (*Vice-Chancellor Emery, 1901*), *48 Atl. Rep. 395; Memphis and Little Rock Railroad* v. *Dow, 120 U. S. 287; Mackintosh* v. *Flint and P. M. R. Co., 34 Fed. Rep. 582; Sioux City O. and W. Co.* v. *Manhattan Trust Co., 92 Fed. Rep. 428; Toledo and R. Co.* v. *Cont. Tr. Co., 95 Fed. Rep. 497; Blum* v. *Whitney, 185 N. Y. 232, 240.*

And it is also pointed out that our statutes concerning reorganizations seem to indicate that this is the public policy of our state.

Finally, it is insisted that even if all necessary facts were properly charged, the laches apparent on the part of the complainant would bar him from relief under the doctrine recently enunciated in the case of *Dana* v. *Tobacco Company* (*Vice-Chancellor Pitney, 1907*), *72 N. J. Eq.* (*2 Buch.*) *44; affirmed, 73 N. J. Eq.* (*3 Buch.*) *736* (*Court of Errors and Appeals, 1908*). It is pointed out that in that case a certain number of weeks was held to be too long for the complainant to have delayed before acting, and in this case, at least, the same number of weeks must be found to have intervened between the time when the complainant will be charged with knowledge and the time when he actually acted.

This brief reference to the various objections to the bill urged by the demurrant indicates their seriousness and importance. But I do not conceive it proper for me to attempt to formulate the law with respect to these different contentions; because I do not find, as above fully stated, that the facts charged in the bill make a case calling for their consideration.

I will advise a decree in accordance with the above conclusions.