### WILSON v. AMERICAN ICE CO. et al.

(District Court, D. New Jersey. August 11, 1913.)

1. EQUITY (§ 363*)—PLEADING—MOTION TO DISMISS—DEMURRER.

A motion to dismiss a bill in equity for insufficiency of fact appearing on the face thereof presents a question of law, and takes the place of a demurrer, as provided by equity rule 29 .(198 Fed. xxvi, 115 C. C. A. xxvi).

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 762–766, 768; Dec. Dig. § 363.*]

2. EQUITY (§ 129*)—BILL—ALLEGATIONS OF FACT.

A bill in equity must allege with particularity every material ultimate fact necessary for the complainant to prove to establish his right to the relief prayed.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 309; Dec. Dig. § 129.*]

3. CORPORATIONS (§ 155*)—DIVIDENDS—DUTY TO DECLARE.

In the absence of statutory provisions, the granting of dividends from the profits of a trading corporation is in the discretion of the directors, subject to the intervention of a court of equity for improper refusal.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 560–563, 568–576, 578, 593–603; Dec. Dig. § 155.*]

4. CORPORATIONS (§ 182*)—DIVIDENDS—RESERVED FUND.

Corporation Act N. J. (2 Comp. St. 1910, p. 1604) § 8, authorizes incorporators to include any provision in their articles for the regulation of the affairs of the corporation, not inconsistent with the act, which they may desire; and section 47 declares that unless otherwise provided in the articles of incorporation, by-laws, etc., the directors in each year, after reserving such sum as a working capital as shall have been fixed by the stockholders, declare a dividend of the whole of its accumulated profits exceeding the amount so reserved, and pay the same to the stockholders on demand. Held, that the word "otherwise," as so used, is applicable to the whole subject of dividends, and that the fixing of the

amount to be reserved as a working capital is to be done directly by the stockholders only in the absence of regulatory provisions in the original or amended certificate of incorporation, or in a by-law adopted by a majority of the stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 686–690; Dec. Dig. § 182.*

For other definitions, see Words and Phrases, vol. 6, pp. 5105–5113.]

5. CORPORATIONS (§ 155*)—DIVIDENDS— STOCKHOLDERS—DECLARATION—RIGHT TO COMPEL—BILL.

Where a bill by a minority stockholder to compel a corporation to declare dividends on preferred stock charged in general terms that the corporation had made large profits, but that the same had been used for improvements to expand the business, etc., and that the directors had refused to declare dividends out of profits amply sufficient to pay the same, and for the purpose of "freezing out" the minority stockholders, including complainant, but did not set out the original or amended certificate of incorporation, or any of the company's by-laws, and did not allege that none of those contained a provision regulating the manner of reserving the working capital from the net profits, so as to show that the directors were not authorized so to do, and further did not allege that the company's assets were in such condition that dividends could be paid without serious injury to the corporation, and set out none of the overt acts tending to show that complainant and the minority stockholders were being oppressed, etc., it was demurrable.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 560–563, 568–576, 578, 593–603; Dec. Dig. § 155.*]

6. CORPORATIONS (§ 155*)—DIVIDENDS—DECLARATION—COERCION—RIGHTS OF MINORITY STOCKHOLDERS.

A minority stockholder may not maintain a bill to compel a declaration of dividends without having first sought relief at the hands of the corporation's directors, and a mere averment in the bill that complainant had demanded of the directors that such dividends be declared, and that the same had been refused, though meetings of stockholders and directors had been held since such demand, was insufficient.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 560–563, 568–576, 593–603; Dec. Dig. § 155.*]

In Equity. Bill by G. Searing Wilson against the American Ice Company and others to compel defendant to declare a dividend on his preferred stock and for ancillary relief. On motion to dismiss the bill for insufficiency of fact appearing on the face thereof. Dismissed.

Everett, Clarke & Benedict and Cornelius W. Wickersham, all of New York City, for complainant.

McCarter & English, of Newark, N. J., and Frank R. Savidge, of New York City, for defendant Ice Co.

RELLSTAB, District Judge. The bill of complaint is filed against the American Ice Company and certain of its officers and directors by a minority stockholder, in behalf of himself and such other stockholders who may join therein, and is designed to force such company to declare a dividend upon its preferred stock. The defendant company moves to dismiss the bill upon the grounds, inter alia, that:

"(1) The bill of complaint does not allege that the defendant corporation and the directors thereof are not authorized by the certificate of incorporation and by-laws of said company to do the things of which complaint is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

made. (2) The bill of complaint does not set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the defendants, and the causes of his failure to obtain such action, or the reason for not making such effort."

[1] This motion, being an alleged defense, in point of law, arising upon the face of the bill for insufficiency of fact, to constitute a valid cause of action, takes the place of a demurrer. Eq. Rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi).

[2] It is elementary that a complainant in equity must allege with particularity every material fact necessary for him to prove to establish his right to the relief prayed. Story's Equity Pleading, § 241; Shipman's Equity Pleading, p. 320; Hageman v. Brown, 76 N. J. Eq. 126, 73 Atl. 862; Schuler v. So. Iron & Steel Co., 77 N. J. Eq. 60, 75 Atl. 552. Only the ultimate facts upon which the complainant asks relief, however, are necessary to be stated, and a short and simple statement of these, omitting mere statements of evidence, is sufficient. See Eq. Rule 25, par. 3 (198 Fed. xxv, 115 C. C. A. xxv)..

[3] It is well settled that, in the absence of statutory provisions, the granting of dividends from the profits of a trading corporation is in the discretion of the directors, subject to the intervention of a court of equity for improper refusal. N. Y., etc., R. R. Co. v. Nickals, 119 U. S. 296, 7 Sup. Ct. 209, 30 L. Ed. 363; Gibbons v. Mahon, 136 U. S. 549, 558, 10 Sup. Ct. 1057, 34 L. Ed. 525; Stevens v. U. S. Steel Corporation, 68 N. J. Eq. 373, 59 South. 905; Blanchard v. Prudential Ins. Co., 78 N. J. Eq. 471, 79 Atl. 533; Murray v. Beattie Mfg. Co., 79 N. J. Eq. 604, 82 Atl. 1038; Cook on Corp. (6th Ed.) § 545.

In the U. S. Steel Case, Vice Chancellor Stevenson said:

"The bill presents no case, apart from our statute (Corporation Act, § 47), in which, under the general equity power of this court, the complainant is entitled to have a dividend declared on the common stock of the defendant corporation. The general rule is well settled that the directors of trading corporations are invested with a wide discretionary power in regard to the distribution of profits in the form of dividends among the stockholders. Subject, of course, to provisions in the charter, and also to the by-laws of the company, it is for the directors to say whether profits shall be distributed to the stockholders, or retained for the purpose of the corporate business. It is, however, equally well settled that this discretionary power is not absolute, and when the directors 'improperly' refuse to make a division of unused profits,' a court of equity will intervene on behalf of any stockholder who may complain. Laurel Springs Land Co. v. Fougeray, 50 N. J. Eq. 756, 759, 760 [26 Atl. 886]; Fougeray v. Cord, 50 N. J. Eq. 185, 197 [24 Atl. 499]; Griffing v. Griffing Iron Co., 61 N. J. Eq. 269, 271 [48 Atl. 910]; 2 Cook, Corp. (4th Ed.) § 545. These general principles must be kept in mind in dealing with such statutes as those which a little later we are to construe. It does not follow, if the minority stockholders have not the benefit of a hard and fast statutory rule for the distribution of profits, that therefore they are exposed to permanent deprivation of dividends, and that they must wait indefinitely, and accept an increasing book value of their stock in place of the cash dividends which they would prefer to enjoy. The New Jersey cases above cited, as well as many cases in other states, illustrate how ample are the powers of courts of equity to enforce the rights and satisfy the reasonable expectations of stockholders in the matter of the declaration of dividends when profits, which are not required to be retained for the purposes of the corporate business, including protection against emergencies, are unreasonably and unjustly allowed to remain undistributed."

[4] By section 8, par. 7, of the New Jersey act concerning corporations (Rev. of 1896, p. 280), as amended by P. L. 1898, p. 407 (2 Comp. St. N. J. 1910, p. 1604), it is provided that the certificate of incorporation may include—

"any provision which the incorporators may choose to insert, 'for the regulation of the business and for the conduct of the affairs of the corporation, and any provision creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any class or classes of stockholders; provided, such provision be not inconsistent with this act."

By section 30 of such act the directors are enjoined from declaring dividends, except from the surplus or from the net profits arising from the company's business. Section 47 of said act, as amended by chapter 110 of the Laws of 1901 (P. L. N. J. 1901, p. 246), provides:

"Unless otherwise provided in the original or amended certificate of incorporation, or in a by-law adopted by a vote of at least a majority of the stockholders, the directors of every corporation created under this act shall, in January in each year, after reserving over and above its capital stock paid in, as a working capital for said corporation, such sum, if any, as shall have been fixed by the stockholders, declare a dividend among its stockholders of the whole of its accumulated profits exceeding the amount so reserved, and pay the same to such stockholders on demand."

It has been held that the word "otherwise," as used in section 47, is not limited to the date of declaring the dividends, but is applicable to the whole subject of dividends, and that the fixing of the sum to be reserved as a working capital is to be done directly by the stockholders only in the absence of provisions regulating that matter, contained in the original or amended certificate of incorporation or in a by-law adopted by a vote of a majority of such stockholders. Stevens v. U. S. Steel Corp., supra; Raynolds v. Diamond Mills P. Co., 69 N. J. Eq. 299, 60 Atl. 941; Bassett v. U. S. Cast Iron, etc. Co., 74 N. J. Eq. 668, 70 Atl. 929. And, in Murray v. Beattie Mfg. Co., supra, it was held by the court of last resort in New Jersey (headnote by the court):

"Under the corporation act of 1896, when the by-laws authorize the directors to determine the amount to be reserved for working capital, their power to determine the amount of dividends is absolute as long as they act in the exercise of an honest judgment."

Turning now to the bill of complaint, it alleges, in substance, mostly on information and belief, as far as is necessary to determine the present motion, that the defendant company is a New Jersey corporation, incorporated on March 11, 1899, with power, inter alia, to carry on the business of manufacturing, gathering, storing, preserving, buying, and selling all kinds of ice; that by an amended certificate of incorporation, authorized about May 13, 1907, its capital stock was reduced to $40,000,000, divided into $25,000,000 of common and $15,000,000 of preferred, 250,000 and 150,000 shares, respectively; that complainant is the owner of 300 shares of the common stock and 100 shares of the preferred stock, the latter bearing a fixed 6 per cent. yearly dividend, payable before any dividend shall be paid on the common stock; that such dividend is cumulative, and that holders of such preferred stock, in case of liquidation or dissolution of the

company, are entitled to be paid in full, both of principal and all earned and unpaid dividends, before any amount shall be paid on the common stock; that complainant has been such a shareholder for upwards of 12 years; that up to July, 1901, dividends on the preferred stock were paid at the agreed rate, but that little has been paid since in such dividends, though the company was amply able to pay from its net profits an annual dividend of at least 2 per cent. on its preferred stock without injuring its business; that on October 31, 1912, the unpaid dividends on such stock amounted to at least 50 per cent., aggregating more than $7,500,000; that a large majority of the common stock and 96.2 per cent. of the outstanding preferred stock is owned by the American Ice Securities Company; that the Securities Company was organized to give complete control of the defendant company to certain persons active in the management of such company, and to "freeze out" the minority stockholders; that the defendant company has accumulated profits, not reserved for working capital, of upwards of $2,000,000, and a surplus of upwards of $3,000,000; that with few exceptions (named) such profits have been put into improvements, maintenance, and equipment, the payment of large salaries, and in surplus, and that at least three-fourths of the accumulated earnings are not required in the prosecution of the business; that during the past three years the defendant company has expended, for maintenance, improvement, and equipment, upwards of $1,500,000, and that during such period an annual expenditure of $100,000 would have been more than sufficient for the necessary repairs and improvements, aside from the acquisition of new plants and the payment of moneys for the purpose of acquiring new business; that the defendant company, by substituting a new bond issue, at a higher rate of interest, for an old one, more than a year and a half before the latter became due, occasioned a loss to the company of nearly $1,000,000; that the defendant company now has a surplus and sufficient accumulated net earnings to pay a dividend on its preferred stock of at least 20 per cent. over and above any duly authorized reserve for working capital; that failure to declare and pay dividends is not due to the exercise of a just discretion by the directors, but to their desire to extend business at the expense of the minority stockholders, and to compel them to dispose of their holdings or become stockholders of the Securities Company; that in several instances in recent years the directors' failure to declare dividends on the preferred stock was due in part to the desire of the majority of the common stockholders to apply the profits, sufficient to pay such dividends, but not on both common and preferred, to repairs and improvements for their general benefit, rather than to the payment of dividends on the preferred stock; that it would be useless to apply to the stockholders or directors of the defendant to take action to declare dividends upon such stock, for the reason that the majority of each of the stockholders and directors are opposed to such declaration, and that the majority of the stockholders and directors who now control the affairs of such company have refrained from declaring any dividends for the last 10 years, except as stated; that the complainant has demanded of such directors that

dividends on such stock be declared, and has frequently demanded declaration and payment of dividends on his preferred stock, and that such demands have never been complied with, except as stated, though meetings of the stockholders and directors have been held since such demands; that complainant has never consented to any by-law permitting the directors to desist from declaring dividends on the common or preferred stock.

The bill thereupon prays for a decree enjoining the defendant company to pay a dividend of 20 per cent. on the outstanding preferred stock, and for discovery, accounting, and a receiver in aid of such payment, etc. It is apparent from this recital that, while the bill covers much ground, its statements, in essentials, are of the most general character. An articulated array of generalities, no matter how well sounding, will not satisfy the requirement that the ultimate facts upon which the prayer for relief is founded must be stated fully, distinctly, and with particularity.

[5] The bill does not set out the original or amended certificate of incorporation, or any of the company's by-laws, nor does it allege that none of these contain any provision regulating the matter of reserving working capital from the net profits; and one is left in the dark concerning whether the incorporators, in the original certificate, or the stockholders, in the amended certificate or by-laws, have formulated any policy in regard to working capital. For aught that appears the directors, in declining to declare dividends out of the profits in question, acted in strict accordance with the provisions in such certificates and by-laws, and in that respect were only carrying out the duly authorized business policy of the corporation. This omission alone, in my judgment, is fatal. The presumption is that the directors' action in that respect is authorized, and it is not overcome by mere general allegations such as:

"There are 'accumulated profits which are not reserved for working capital.'"

"At least three-fourths of said accumulated earnings are not required in the prosecution of the business."

"Company is amply able to declare and pay large portions of all due and unpaid dividends."

"The company 'has assets sufficient to pay the same without injuring its business.'"

And (even this on information and belief):

"Complainant 'has never consented to any by-law permitting the directors to desist from declaring dividends.'"

The mere fact that a corporation has a large amount of surplus or net profits does not entitle the stockholder as of right to dividends. N. Y., Lake Erie & W. R. R. v. Nickals, supra; Gibbons v. Mahon, supra; Trimble v. Amer. Sugar Ref. Co., 61 N. J. Eq. 340, 48 Atl. 912.

In Gibbons v. Mahon, supra, it became necessary to decide whether certain shares of stock, representing the accumulated profits of the corporation, were to be treated as capital or dividends. It was decided that they were capital. Mr. Justice Gray, in delivering the opinion of

the Supreme Court, used the following language, which, because of its pertinency to the question here considered, is quoted at length:

"Money earned by a corporation remains the property of the corporation, and does not become the property of the stockholders, unless and until it is distributed among them by the corporation. The corporation may treat it and deal with it either as profits of its business or as an addition to its capital. Acting in good faith and for the best interests of all concerned the corporation may distribute its earnings at once to the stockholders as income, or it may reserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years, or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property. Which of these courses shall be pursued is to be determined by the directors, with due regard to the condition of the company's property and affairs as a whole; and, unless in case of fraud or bad faith on their part, their discretion in this respect cannot be controlled by the courts, even at the suit of owners of preferred stock, entitled by express agreement with the corporation to dividends at a certain yearly rate, 'in preference to the payment of any dividend on the common stock, but dependent on the profits of each particular year, as declared by the board of directors.' New York, Lake Erie & Western Railroad v. Nickals, 119 U. S. 296, 304, 307 [7 Sup. Ct. 209, 30 L. Ed. 363]."

Section 47 of the Corporation Act recognizes the probable need of working capital in addition to that subscribed, to a successful operation of the company's business; and what amount is required—irrespective of whether the stockholders directly, or indirectly through their agents, fix it—depends upon the character of the enterprise, the facilities for production, the cost of operating, the condition of existing markets, both as to demand and ability to make prompt settlements, and a forecast of what the market in the immediate future is likely to require. These and other considerations may impel an honest, competent directorate to withhold dividends; and the courts will not interfere in such determination, in the absence of clear and unambiguous allegation showing willful neglect or bad faith.

The defendant company, authorized to gather natural and manufacture artificial ice, may take such steps to avert an ice famine or extend their capacity to handle a growing business as in their discretion may be necessary, and if in doing so it appropriates some or all of the accumulated profits in increasing the capacity of existing, or in the acquisition of new, storehouses or manufacturing plants, this will be presumed, in the absence of a showing to the contrary, to have been necessary for the protection or betterment of the company's business.

The bill shows accumulated profits of $2,000,000 and a surplus of $3,000,000. These sums are only seemingly large; the profits being less than 10 per cent. of the outstanding capitalization. The bill further shows that during the first five years the net profits, save certain small dividends paid, have been put into improvements and surplus; that the average annual net profits have been less than 2 per cent. of the outstanding capital; that the net accumulations are the result of more than a decade's business, during which the dividends were small and intermittent; that during the last three years the company has expended more than $1,500,000 for maintenance, improvements, and equipment, but how much is now in cash or "quick" assets, or in real

estate, equipment, or other "slow" assets, does not appear. For aught appearing, none of such accumulations are presently available for dividends. In order to distribute the accumulations here intended to be alleged to have been wrongfully withheld from the stockholders, it might be necessary to sell some of the new acquisitions or to borrow large sums, either of which might seriously menace the future welfare and integrity of the company.

Courts protect the minority against the oppression of the majority stockholders, because otherwise such wrongs would go unrighted and the injured be remediless. But the courts will also protect the majority against the oppression of the minority. The "strikes" of the minority against the majority are often as inequitable as the "freezing out" of the minority by the majority.

Vexatious suits, carrying in their wake, not only unnecessary expense, but exposure of internal management and business policy, of advantage to none but competitors, and often brought in the latter's interests, entailing serious loss, if not disaster, to the common interests of all the stockholders, have no place in a court of conscience.

That the dividends paid during a decade were few and scant, and that large expenditures for new plants, equipment, etc., were made during the same period, does not prove that this was improper; and merely setting forth such facts does not assert that it was. That the management of the company's affairs is in the complete control of the majority does not indicate that the minority is being oppressed. It is the duty, as well as the privilege, of the majority to control. The allegation that the holders of the majority stock for years have pursued a definite policy to force complainant to sell out is a conclusion, rather than a statement of fact. What are the overt acts? It is inconceivable that an enterprise using capital of the magnitude here described could have pursued a systematic plan to coerce complainant to sell his stock, without exposing sufficient of such plan to enable complainant to assert the facts underlying the conclusion here stated.

Furthermore, involved in the question whether the failure to declare dividends from known accumulated profits was improper is the one whether the complainant has exhausted all available means within the corporation before he came into court.

[6] The business of a corporation, within limitations, is to be managed by its board of directors, and as these are selected by the majority of stockholders and subject to their control, it is the duty, generally stated, of a minority stockholder having a grievance—fancied or real—against the conduct of such directorate or the business policy of the majority stockholders, to seek redress, in the first instance, from such directors, or their principals, the majority stockholders. Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Quincy v. Steel, 120 U. S. 241, 7 Sup. Ct. 520, 30 L. Ed. 624; Maeder v. Buffalo Bill's Co. (C. C. Dist. N. J.) 132 Fed. 280.

Courts of equity are not for the purpose of correcting errors in the management or business policy of a corporation, in the absence of bad faith; and to maintain a bill in equity involving such considerations the complainant, in addition to showing that the company refused to

declare dividends out of net profits, must show, not only that such profits should be distributed among the stockholders, but that the company continues its refusal after having been seasonably requested to make such distribution, or that its hostility to the minority interests is so manifest that such request would be but an idle performance. This duty is not, as supposed by complainant, required only when the minority stockholder comes within equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv) and files a bill "founded on rights which may properly be asserted by the corporation." This duty grows out of the very relation which such a stockholder bears to his associates and the corporation.

A minority stockholder is therefore required, on the fundamental equitable principle that he who seeks equity must do equity, to show that he has availed himself of his rights within the corporation, or that it would be unavailing to attempt to do so. This showing the complainant in this case has not made. The statement that complainant frequently demanded of the directors that such dividends be declared and that the same have been refused, though meetings of stockholders and of directors have been held since such demands, is not sufficiently full and certain to comply with the rule hereinbefore stated. When were the demands made with reference to such meetings, and what, if any, was the action upon which the pleader bases his conclusion that the refusal was improper? As the bill asserts that the accumulations were the product of a great number of years, were such demands made before, during, or after the devotion by the company of such profits to the acquisition of new plants, improvements, equipment, and new business, to all of which objects the bill, by at least necessary implication, asserts such profits were being applied? The bill, as noted, fails to disclose how much of the accumulated profits are in cash or "quick" assets, and there is an utter absence of any facts showing that the complainant has attempted seasonably to obtain redress within the corporation or that the refusal to declare dividends was improper. The omissions relate, not to mere matters of evidence, but to ultimate facts essential to maintain the jurisdiction of the court in reviewing the business management of a trading corporation, as well as to maintain a bill to compel the declaration of dividends from accumulated profits. Further, the bill does not show the reason for not making other or more attempts within the corporation to obtain such relief. The allegation that it would be useless to apply to the stockholders or directors to declare dividends, for the reason that a majority of each are opposed thereto, does not meet the requirement.

That the failure to declare more dividends is in accordance with the purpose of the majority is inferable from the fact that more has not been paid, and an express allegation that such majority are opposed to paying more dividends does not indicate such an hostility to the interests of the minority as to justify the failure to make further attempts to obtain the desired dividends. There is nothing in the case made by the bill that shows that anything done by those in control of the company's affairs is inimical to the interest of any class of stockholders. The putting profits into additional plants, improvements,

etc., is not per se inimical to such interests. The very life of the company may demand such a policy. While the payment of dividends is the desideration in trading corporations, to devote all or any of the profits at all times may be suicidal.

From these reflections, it is not to be inferred that a trading corporation may go on indefinitely, and apply its profits to plant, equipment, etc., to the exclusion of paying dividends. There is a limit to the directors' discretion in such matters. Storrow v. Texas Cons., etc., Ass'n, 87 Fed. 612, 31 C. C. A. 139. Griffing v. Griffing Iron Co., 61 N. J. Eq. 269, 48 Atl. 910, is a case where the accumulated profits exceeded the total capital stock of the company (so shown by the bill, though not in the opinion), and, while this was not the only ground influencing the court to overrule the demurrer interposed by the directors in that case, yet it would be difficult to say that such fact alone did not show sufficient equity to require the defendants to make answer. The case at bar, however, shows no such condition of affairs. While the period during which no or few dividends have been paid is long, there is nothing in the amount of the surplus, in view of the large capital employed, that forces the conclusion that a scheme existed to enhance the interests of the common as against the preferred stock, or to coerce the holders of the minority stock to sell or dispose of such holdings. The complainant's holdings are very small—but .0018 of the capitalization involved—and, as well said by Vice Chancellor Pitney in Trimble v. Amer. Sugar Ref. Co., supra:

"Admitting that the holder of so small a part of the stock is entitled to be heard in this court for the correction of any real grievance he may suffer by the misconduct of the majority, yet I think it is the duty of the court to require that he should show a clear case by distinct affirmative allegations, even if they should necessarily include some of a negative character. In short, he must anticipate and exclude all reasonably probable conditions which may bar his relief."

I am of the opinion that the bill lacks equity in the particulars considered, and, as they go to the foundation of the suit, it must be dismissed, unless the complainant can by amendment avoid such defects.