COLLINS v. PORTLAND ELECTRIC POWER CO. (KURTZ, et al. Interveners).

KURTZ et al. v. PORTLAND ELECTRIC POWER CO. (COLLINS, Intervener.)

(District Court, D. Oregon. July 13, 1925.) Nos. E–8733, E–8738.

1. Corporations ⬅65—Preferred stockholders become proportionate owners along with other stockholders in entire property of corporation.

When preferred stock is created and issued to holders, unless limitations or restrictions are embodied in stock contract, or are contained in articles of incorporation, stockholders become proportionate owners, along with all other stockholders in entire property of organization, whether it consists of corporate estate, accretions, or surplus.

2. Corporations ⬅65—Every stock contract bears its own rights, privileges, and limitations.

Every stock contract bears its own rights, privileges, and limitations, but must be read in subordination to corporation regulations with respect to same.

3. Corporations ⬅156 — Holders of second preferred stock held entitled to receive out of surplus or net profits dividends before any were set apart for common stock.

Under provisions as to dividends in articles of incorporation and stock certificates, holders of second preferred stock *held* entitled to receive out of surplus or net profits dividends at rate of 6 per cent. per annum before any dividend should be set apart for or paid on common stock.

4. Contracts ⬅143, 162—Contract must be construed as a whole; conflicts to be harmonized.

A contract must be taken by its four corners and construed as a whole, and all of its parts must be harmonized, if within bounds of reason this can be done, and unless inexplicable repugnance exists on comparison of several clauses.

5. Corporations ⬅152—Authority given board of directors to declare dividends does not permit impairment of stockholder's rights.

Authority given board of directors to declare dividends in payment of interest charges is administrative in its concept, and should not be permitted to impair primary right of any of stockholders.

6. Corporations ⬅151 — Directors authorized to create a reserve fund in preference to payment of dividends.

Directors are charged with management and direction of business concerns of company, and are authorized, when necessity and economic convenience suggest and require, to hold a suitable fund in reserve to meet exigencies, and may maintain such a reserve out of net surplus in reasonable proportion, in preference to payment of dividends on capital stock.

7. Corporations ⬅150—Interest charges payable only when board of directors shall declare dividends out of net surplus for that purpose.

As board of directors may hold a suitable fund in reserve to meet exigencies, interest charges on stock are payable only when they shall declare dividends out of net surplus for that purpose and in manner in which they may determine.

8. Corporations ⬅152—Directors in declaring dividends must act in pursuance of authority accorded by charter and stock certificate.

Corporation directors are not a law unto themselves, but must act in exercise of their function of declaring dividends in pursuance of authority accorded them by charter and provisions of stock certificates.

9. Corporations ⬅150—No dividend can be declared for payment of interest on preferred stock, unless it has been earned.

No dividend can or should be declared for payment of interest on preferred stock, whether cumulative or noncumulative, unless accumulated net surplus, exclusive of such reasonable reserve as may have been set aside, is sufficient to pay part or all of such interest charges.

**10. Corporations ⊕150—Shareholders entitled to receive interest charges only when declared out of surplus or net profits.**

Shareholders are entitled to receive their interest charges only when and as declared out of surplus or net profits.

**11. Corporations ⊕156 — Holders of second preferred stock earned their interest when net surplus was sufficient, after satisfying prior preferred cumulative demands, to pay it for any given year.**

Under stock contract, *held* that, when there was an accumulation of net surplus, sufficient after satisfying all prior preferred cumulative demands, to pay the interest or any part of it for any given year on the second preferred stock, holders thereof earned their interest to that extent for the year, and a mere postponement of payment did not impair that right, so that, though dividends were noncumulative, they were entitled to payment thereof before any payment to common stockholders.

In Equity. Suit for injunctions by James C. Collins, against the Portland Electric Power Company, an Oregon corporation, in which William B. Kurtz and others intervened, consolidated with a similar suit by William B. Kurtz and others against the same defendant, in which James C. Collins intervened. Injunctions granted in part and denied in part as to first suit, and granted as to the second suit.

Cravath, Henderson & De Gersdorff, of New York City, and Bronaugh & Bronaugh, of Portland, Or., for Collins.

Joseph S. Clark, of Philadelphia, Pa., for Kurtz, Cowperthwait, and Chase.

Griffith, Peck & Coke, of Portland, Or., for defendant.

WOLVERTON, District Judge. On March 27, 1925, the board of directors of the defendant company, by resolution duly adopted, declared: First, a dividend of one-half of 1 per cent. upon its second preferred stock for the year ending December 31, 1920; second, a like dividend upon such stock for the year ending December 31, 1921; and, third, a like dividend thereon for the year ending December 31, 1923. A previous dividend had been declared upon such second preferred stock for the year 1923 of 1½ per cent., payable December 1st of that year. This dividend has been paid. The plaintiff Collins is a holder of common stock of the company, and brings his suit to enjoin the payment of the dividends so levied and unpaid, on the ground that the board of directors was and is without authority or warrant of law for making such levies under the charter regulations of the com-

pany and the stock contracts issued in pursuance thereof.

Later, on April 23, 1925, the board of directors, at a meeting thereof, by resolution declared a cash dividend of 10 cents a share on the outstanding common stock of the company for the year ending December 31, 1924, payable June 1, 1925. William B. Kurtz, Charles T. Cowperthwait, and Randall Chase, second preferred stockholders, being dissatisfied with the action of the board, have also entered suit against the company to enjoin the payment of such dividend.

The proceedings are, in effect, really cross-suits to determine practically the same controversy, which is whether the dividends declared upon the second preferred stock were regularly and lawfully entered. The second cause is subsidiary. The two causes were heard together, and will be treated together for determination of the allied controversy.

Prior to June 1, 1915, the company had outstanding one class of stock only; namely, its common stock. About this time it issued two new classes; namely, its 6 per cent. first preferred and its 6 per cent. second preferred stock. In 1921 it issued another class known as its 7 per cent. prior preference, and in 1924 still another class denominated 7.2 per cent. first preferred stock.

No controversy has arisen or exists herein respecting the first 6 per cent., the prior preference 7 per cent., or the first preferred 7.2 per cent. stocks, thus narrowing the inquiry to a direct issue between the second preferred and the common stock. No dividends were declared or paid on the first preferred stock, nor were the accumulations thereon liquidated until in 1921. When liquidated and paid out of the net earnings of the company, there remained a surplus of $139,998. In 1920 the surplus or net earnings of the company amounted to $487,545. There was due for that year, but unpaid, interest on the first preferred stock in the sum of $300,000, which, if deducted, would have left a balance of $187,545. But it will be remembered that no dividends had up to this time been declared or paid upon the first preferred stock. In no year prior to 1920 were the net earnings sufficient to meet the yearly interest on the first preferred stock. In 1920 there was sufficient, as we have seen, to meet that year's interest on such stock, with a surplus remaining of $187,545. But in that year the net earnings were nowhere nearly sufficient to meet the accumulations of interest due and unpaid upon that class of stock. In 1921 the net earnings of that and prior years were sufficient, as we have seen,

to pay the accumulated interest on the first preferred stock from the date of its issue, leaving a net surplus, as stated, in the sum of $139,998.

There is another situation, in view of the contention of counsel for the common stockholders, to be noted, which is that, at the time when the first preferred 6 per cent. stock and the second preferred stock were created and issued, there was and existed a net surplus in the sum of $576,152. On one theory of the several contentions advanced it is urged that the second preferred stock has no legal right to participate in that accumulaton, nor in any until the net surplus shall thereafter reach a sum in excess of all interest accumulations on all prior preference stock. This event, it is claimed, did not take place until in 1923.

[1, 2] I think it can hardly be questioned that, when stock of the nature indicated is created and issued to holders, unless limitations or restrictions are embodied in the stock contract, or are contained in the articles of incorporation, the stockholders become proportionate owners, along with all other stockholders, in the entire property of the organization, whether it consists of the corporate estate, accretions, or surplus profits. Indeed, the very provisions respecting the distribution of the property of the company on dissolution thereof are in consonance with this principle, and are evidentiary of the purpose and intention of the company so to treat the stock contracts. Of course, every stock contract bears its own rights, privileges, and limitations, but it must be read in subordination to corporation regulations with respect to the same.

The articles of incorporation and the stock certificates outstanding prior to the creation of the 7.2 per cent. first preferred stock, the same having been provided for in 1924, specify distinctly what the stockholders of each classification shall be entitled to receive. Among other things, it is specified that "the dividend upon the prior preference stock of every series and the first preferred stock shall be cumulative, but accumulations of dividends shall not bear interest." Then, as to the second preferred stock, the holders thereof "are entitled to receive, when and as declared, out of the surplus or net profits of the company, dividends at the rate of six per cent. (6%) per annum, payable as the board of directors may determine, before any dividends shall be set apart for or paid upon the common stock. The dividends upon the second preferred stock shall not be cumulative."

The articles and stock certificates provide in detail what the board of directors may do with respect to awarding dividends as follows: "The board of directors may pay dividends upon the first preferred stock provided the dividends upon the prior preference stock, with all accumulations, including accrued dividends to the date of payment of the first preferred stock dividend, shall have been paid in full or a sum sufficient for the payment thereof shall have been set apart for that purpose, but not otherwise, and may pay dividends upon the second preferred stock, provided the dividends upon the prior preference stock and upon the first preferred stock, with all accumulations, including accrued dividends to the date of the payment of the second preferred stock dividend, shall have been paid in full, or a sum sufficient for the payment thereof shall have been set apart for that purpose, but not otherwise, and may pay dividends upon the common stock, provided the dividends upon the prior preference stock and upon the first preferred stock, with all accumulations, including accrued dividends to the date of the payment of the common stock dividend, and dividends on the second preferred stock at the rate of six per cent. (6%) per annum for a period of six months immediately preceding the day on which the common stock dividend is paid, shall have been paid in full, or a sum sufficient for the payment thereof shall have been set apart for that purpose, but not otherwise. The holders of the common stock are entitled to receive all additional surplus or net profits distributed in dividends after the dividends above provided for shall have been paid or set apart."

On April 4, 1924, the stockholders approved, and on April 7th following the board of directors adopted amendatory and supplementary articles of incorporation, changing somewhat the form of stock contracts for the purposes of clarity, but it is conceded that this does not modify or alter the real intendment and legal effect of the stock contract above alluded to and quoted from.

Two opposing theories are advanced respecting the rights pertaining to the second preferred stock. One is that the dividend rights are dependent upon the earnings each year, considered apart from and independent of the earnings of any other year; that is to say, the stock is entitled to a dividend credit, not to exceed 6 per cent. per annum, to the extent of the net or surplus earnings for the year, over and above the current dividends on prior classes. This would uphold all of the three dividends declared in favor of the

second preferred stock for the years 1920, 1921, and 1923.

The other and converse view, when carried to its logical extremity, is that, if dividends are not declared on this stock in the year when earned, they are lost forever, and no dividend can thenceforth be declared in relief of the stockholder. This, in view of the record, would defeat all such assessments.

There is an intermediate suggestion, which would invalidate the 1920 dividends, but sustain those of 1921 and 1923.

[3] Unquestionably, the correlative and interdependent rights of the second preferred and common stockholders must depend upon fit and proper interpretation of the stock contract. There are a few things and conditions, in view of the contractual disposition, that would appear to be absolute. The most potent among these, so far as concerns the present controversy, is that, as it relates to the common stock, the second preferred is a preference stock; speaking now respecting the interest reserved by the contract in favor of the second preferred stockholder. The declaration of the contract as a primary proposition is clear and distinct that the holder of such stock is entitled to receive, out of the surplus or net profits of the company, dividends at the rate of 6 per cent. per annum before any dividends shall be set apart for or paid upon the common stock. How determined and when payable are matters subsidiary to the underlying declaration which determines and defines the preference right as against the common stockholder. This preference right is supported by the further declaration as to when the board of directors may pay dividends on such stock. Dividends may be so paid thereon, provided the dividends upon the prior preference stock and upon the first preferred stock, with all accumulations, including accrued dividends to the date of the payment of the second preferred stock, shall have been paid in full, etc., and not otherwise. Then the contract declares when dividends may be paid on the common stock. These stipulations and recitals of the contract show beyond peradventure that, as to the interest charge, the second preferred is a prior preference stock, relatively speaking, to the common stock, and it should be given effect as such, and protected as against the payment of dividends on the common stock. The board of directors, while authorized and entitled to exercise a large discretion respecting the time and conditions under which the dividends shall be paid, may not, by any process of indirection, defeat the basic right of second preferred stockholders to payment of interest.

[4, 5] What is termed the six months' clause was designed, no doubt, to protect the second preference stockholders in the payment of their interest as a prior and preferred right to the setting apart or the payment of any dividend upon the common stock. It is a well-recognized canon of construction that a contract must be taken by its four corners and construed as a whole. All of its parts must be harmonized, if within the bounds of reason this can be done, and unless inexplicable repugnance exists on comparison of the several clauses. As we have seen, the second preferred stockholders' dividend right to receive their interest prior to the setting apart of any dividend upon the common stock is a basic and primary right, made so by the express terms of the contract. The authority given the board of directors to declare dividends in payment of interest charges is administrative in its concept, and should not be permitted to impair the primary right of any of the stockholders. If it was designed to authorize the board of directors to split any part of the second preferred stockholders' annual interest with the common stockholders, the six months' clause would be void and inoperative to that extent. For instance, if the appropriate surplus, that is, the surplus after the payment of all prior preference accumulations for any one year, is barely sufficient to pay the 6 per cent. interest on the second preferred stock for the year, it would be an invasion of the second preferred stockholders' contractual and primary right to declare a dividend of but 3 per cent. on such stock, and thereupon to declare a dividend covering the balance in favor of the common stock. Especially would this be true if, as contended, interest on the second preferred stock not paid in the year when earned is lost forever to the stockholder.

If the clause "the holders of the common stock are entitled to receive all additional surplus or net profits distributed in dividends after the dividends above provided for shall have been paid or set apart" were allocated, as it should be, to its proper place in the contract, that is, to follow the clause "the dividends upon the second preferred stock shall not be cumulative," there could be no fault in the construction maintained. This clause defines the primary right of the common stockholder, and is not administrative in character, nor one concerning which the board may exercise a discretion.

[6-8] The holders of the second preferred

stock are entitled to receive dividends at the rate of 6 per cent. per annum when so declared, and payable as the board of directors may determine. The reason for this provision as to time and manner of declaring and paying dividends covering the interest regulation is obvious. The directors are charged with the management and direction of the business concerns of the company, and are authorized, when necessity and economic convenience suggest and require, to hold a suitable fund in reserve to meet the exigencies. So the board may maintain such a reserve out of the net surplus in reasonable proportion in preference to the payment of dividends upon the capital stock, and in this way must exercise a business discretion for advancing and maintaining the best interests of the company, which, upon the whole, is designed to subserve the best interests of the stockholders as well. Clearwater v. Meredith, 1 Wall. 25, 40, 17 L. Ed. 604; New York, etc., Railroad v. Nickals, 119 U. S. 296, 303, 7 S. Ct. 209, 30 L. Ed. 363. The interest charges, therefore, are payable only when the board of directors shall declare dividends out of the net surplus for that purpose, and in manner which they may determine. Of course, the directors are not a law unto themselves. They must act in the exercise of their function of declaring dividends in pursuance of the authority accorded them by the charter and the provisions of the stock certificates.

This brings us to a discussion of the primary right of the second preferred stockholders to receive their interest when dividends are declared for payment. In argument the clause "the dividends upon the second preferred stock shall not be cumulative" is stressed. This is a qualification of the primary right, and is likewise controlling with the board of directors in declaring dividends. The term "cumulative" is so specifically defined as to need no elucidation. It is thought, in one presentation, to be the antithesis of noncumulative; that is to say, if no dividend is declared in any one year when there is a surplus applicable, none can be declared in any year later, because it is argued that to do this would be to make that which is declared noncumulative cumulative. The argument is not persuasive.

As we have seen, the second preferred stockholders' primary right is to receive dividends, in payment of interest, out of surplus funds applicable; that is, such surplus as may remain after the interest with accumulations on all prior preference stock has

been paid, or funds set aside for that purpose. It is manifest that, if no such surplus remains after dividends are declared for taking care of the requirements of all prior preference stock, the second preferred stockholders are not entitled to any dividend in payment of their interest. But, if a surplus still remains, after providing for the demands of all prior preference stock, a different question is presented. In such a case the second preferred stockholders have earned their annual interest, or to the extent that the remaining surplus is sufficient to pay the same, for the year. The board of directors may, if the exigencies demand, set aside such surplus for economical or legitimate purposes, or may allow it to accumulate with earnings of succeeding years before declaring further dividends; but the condition remains that, for the particular year, the second preferred stockholders have earned either a part or the whole of their annual interest, and dividends are not declared for payment thereof through the adverse exercise by the board of directors of its discretion in one or other of the instances mentioned above. Payment being thus deferred, what right, if any, have the second preferred stockholders to dividends out of appropriate surplus accumulations that may appear in subsequent years?

The question came up in Bassett v. U. S. Cast Iron Pipe & Foundry Co., 74 N. J. Eq. 668, 70 A. 929. In that case the board of directors created a fund known as "Reserve for additional working capital." The fund was not used as its title would seem to import, but, on the other hand, was invested in securities for earning profits. Later a portion of the fund was released from designated reserve, and thereupon a dividend was declared in favor of the preferred stockholders out of the released funds. A common stockholder sued to enjoin payment of the dividend, which was denied. The court was of opinion that the fund in character was never appropriately in reserve, but that, if it were, the action of the directors had the effect to restore it to the character it originally bore. The point which is material here then arose in pursuance of the claim made by the common stockholder that the preferred stock dividends must be declared and paid out of profits accumulated by the company during the same fiscal year; that is to say, that profits made in one year cannot be paid out through dividends declared in a succeeding year. The position was declared by the trial court to be at variance with the charter provisions. The case went to the

Court of Errors and Appeals, 75 N. J. Eq. 539, 73 A. 514, and the point was there presented. The court, after premising that, by the company's certificate of incorporation, its preferred stock was entitled to noncumulative dividends not exceeding 7 per cent. per annum, payable out of any and all surplus net profits, held that, "when the reserve fund is accumulated, in whole or in part, by the cutting down of dividends which would otherwise have been paid to preferred stockholders, that fund, so far as it represents moneys so retained, is available for the payment of subsequent dividends upon the prefered stock." The words "shall be entitled out of any and all surplus net profits," found in the certificates, seem to have been stressed by the lower court, but not especially by the Court of Appeals; the latter court concluding that "so far as that fund is made up from moneys which would otherwise have been paid to the preferred stockholders, we concur in the conclusion of the vice chancellor that it is available for the purpose of paying the dividend, which is the subject-matter of this controversy."

Two cases later arose in New Jersey against the same company, growing out of subsequent dividends declared by the board of directors, one for one-half of 1 per cent. in favor of Day, a preferred stockholder, and the other for a like amount payable to Moran, a common stockholder. Somewhat of the same condition respecting a reserve for a working capital obtained as in the Bassett Case. In 1922 dividends were declared to the amount of 7 per cent., being in full of the annual interest in favor of the preferred stock, and a sum sufficient to pay the dividends was withdrawn from the reserve fund, and in 1923 dividends as above indicated were declared. Moran, the common stockholder, complained that, Day having been paid his 7 per cent. for the year 1922, it was not within the authority of the board of directors to declare the extra dividend of one-half of 1 per cent. of withheld dividends of prior years. Day, on the other hand, sought to prevent the payment of the dividend declared on the common stock "out of the profits of 1922"; the point of his contention being that no dividend can be declared on the common stock until all withheld profits applicable to dividends on the preferred stock have first been divided and paid. Thus it will be observed that these cases are in striking analogy to those at bar. The citations are Moran v. United States Cast Iron Pipe & Foundry Co., and Day v. United States Cast Iron Pipe & Foundry

Co., 95 N. J. Eq. 389, 123 A. 546. The court observed "that section 18 [of the New Jersey statute—stock regulations being statutory in that state] provides not only that preferred stockholders shall be entitled to receive, and the corporation shall be bound to pay, a fixed yearly dividend, but also declares that such dividend shall be paid 'before any dividend shall be set apart or paid to the common stock.'"

After a very lucid discussion of the statutory requirements, the court concludes, as respects the intendment, "that no profits were to be divided among common stockholders, whatever may have been their origin or however applicable, unless the company's obligation to the preferred stockholders was first discharged." As a result, Moran's bill was dismissed, and a decree for Day advised.

These cases went to the Court of Errors and Appeals, 126 A. 302 and 329. An opinion was delivered in the Day Case. The Moran Case was decided by reference to that opinion. Both cases were affirmed. In affirming the Moran Case the court specifically concurred in the views of Vice Chancellor Backes to the effect that the working capital reserve involved, partially made up of a definite sum withheld from earned dividends on the preferred stock of previous years, was nevertheless in fact a part of the surplus of the corporation, and that a belated dividend upon the preferred stock was properly declared out of the withheld preferred stock dividends portion of it by the board in 1922, although the preferred stock had already received its stipulated 7 per cent. of dividends out of the earnings of that year.

Whatever stress may be laid upon the particular wording of the certificate of corporation and contractual obligation, there can be no question that the courts in cases cited at all times treated the preferred stock in litigation as noncumulative, and, so regarding it, formulated their deductions, both in argument and final results. Much significance is laid upon the wording of paragraph 4 of the New Jersey statutory provision, which reads: "The preferred stock shall be entitled out of any and all surplus net profits whenever declared by the board of directors, to noncumulative dividends at a rate not to exceed 7 per cent. per annum for the fiscal year beginning on the first day of June, 1899, and for each and every other fiscal year thereafter, payable in preference and priority to any payment of any dividend on the common stock for such fiscal year."

This paragraph was not referred to in

the New Jersey cases. It is, however, but a more particular and explicit statement of that which is contained in the preferred stockholders' certificate in question; the crisp meaning of which is not materially different. In the instant case the preferred stockholder is entitled to receive dividends at the rate of 6 per cent. per annum, payable as the board of directors may determine, before any dividends shall be set apart for or paid upon the common stock. The addition of the clause "for each and every fiscal year" would simply make that specific which is commonly understood when we speak of the payment of interest at a fixed rate per annum. The difference here is that the interest at the rate fixed is payable when and as declared, and as the directors may determine.

In New York, etc., Railroad v. Nickals, supra, the preferred stockholders were entitled to "noncumulative dividends, at the rate of six per cent. per annum, in preference to the payment of any dividend on the common stock, but dependent on the profits of each particular year, as declared by the board of directors." The court construed the clause "as declared by the board of directors" as qualifying the first clause, and not the words "dependent on the profits of each particular year." But the crux of the court's holding is that the prefered stockholders are not entitled as of right to dividends payable out of the net profits accruing in any particular year, unless the directors declare, or ought to declare, dividends payable out of such profits, and that whether a dividend should be declared in any particular year is a matter belonging in the first instance to the directors to determine with reference to the company's property and affairs as a whole.

Hazeltine v. Railroad Co., 79 Me. 411, 10 A. 328, 1 Am. St. Rep. 338, is interesting. A by-law provided: "Dividends on the preferred stock shall first be made semiannually from the net earnings of the road, not exceeding six per centum per annum, after which dividend, if there shall remain a surplus, a dividend shall be made on the nonpreferred stock up to a like per cent. per annum; and should a surplus then remain of net earnings, after both of said dividends, in any one year, the same shall be divided pro rata on all the stock."

The court held in pursuance of a former ruling, that the preferred stock was noncumulative, and further observed that, "had the by-law merely provided that the preferred shares should be entitled to a dividend of six per cent. annually when earned, the arrearages of one year would have been payable out of the earnings of subsequent years." Speaking generally as to the subject where preference dividends are dependent upon the profits of a single year, which was the case before the court, the case of Dent v. London Tramway Co., L. R. 16 Ch. Div. 344, is cited, wherein Jessel, M. R., says: "That means this, that the preferred shareholders only take a dividend if there are profits of the year sufficient to pay their dividend. They are co-adventurers for each particular year, and can only look to the profits of that year. If they are lost for that year, they are lost forever."

[9] It is clear from a survey of these cases, and it must be so upon principle and sound deduction, that no dividend can or should be declared for payment of interest upon preferred stock, whether cumulative or noncumulative, unless it has been earned. This means unless the net surplus accumulated, exclusive of such reasonable reserve as the board of directors may have set aside for the economical use of the company, is sufficient to pay a part or all of the interest charges. See, also, Elkins v. Camden & Atlantic Railroad Co., 36 N. J. Eq. 233.

[10] The shareholders are entitled to receive their interest charges only when and as declared out of the surplus or net profits. There is no fixed due date for the payment of any interest to stockholders, but they are entitled to the fixed annual rate when the board of directors, in their wisdom and business discretion, see fit to declare dividends for the liquidation and payment thereof; the board at all times to be controlled by the charter regulations and the contractual rights and relations of the shareholders.

It is questioned whether the second preferred stockholders, under the charter and their certificates of stock, ever earn any of their interest reserved, until and when a dividend is declared for the payment thereof. Whether they may be said to have earned their interest or some part thereof, as the case may be, when there is appropriate surplus available for payment of such interest, it must be conceded that they are entitled to a dividend therefor, subject to the discretion of the board of directors, "when and as declared"; that is to say, the second preferred have advanced to a status where and when there exists an appropriate surplus for the immediate payment of some part or the whole of the interest reserved. The board of directors may reduce or take away the surplus by setting it aside as a reserve for corporation business purposes, or it may

postpone the payment of the dividend to which the shareholders are entitled, but the fact remains that the company has accumulated a surplus appropriate to the payment of the interest, in part, it may be, or the whole of it. There is the fund and the potential right, when usable, for the second preferred stockholders' purposes.

The case of Elkins v. Camden & Atlantic Railroad Co., supra, is apt. There, by the charter provisions, the holders of preferred stock were entitled "to receive dividends on the same, not to exceed seven per centum per annum, before any dividend shall be set apart or paid on the other and ordinary stock of said company." The court was of the opinion that, if there were no profits during the current year, the preferred stockholder was not entitled to a dividend; if there were, he was entitled to a preference to the extent of 7 per cent. or such proportion thereof as the profits were adequate to pay, but not to carry any deficiency or arrears over to a subsequent division of profits.

The meaning ascribed to the word "noncumulative" by lexicographers need not embarrass us. In a learned and discriminating article contributed to the Columbia Law Review, vol. 23, No. 4, p. 360, by A. A. Berle, Jr., of New York, the author says (page 363): "Where there are no earnings, there is no right then or thereafter in respect to that year—that is what the word 'noncumulative' means."

If there never comes a time when the shareholder is entitled to his dividends, it is obvious that none can be rightfully or lawfully declared. But, when conditions impend that dividends may be declared, it would result in an obvious infraction of every sense of justice and equity to attempt to defeat the right by merely postponing a declaration to a subsequent year. This is lucidly illustrated by a supposed case, put by the author in the article alluded to. The postponing of the dividend under such circumstances is but a delay of justice, which ought to be restored at the earliest opportunity.

[11] The conclusion reached is that, when there was an accumulation of net surplus sufficient, after satisfying all prior preferred cumulative demands, to pay the interest or any part of it for any given year upon the second preferred stock, the holders thereof earned their interest to that extent for the year, and of right were entitled to their dividends, which could not be defeated by the board of directors, except by setting aside the surplus for legitimate corporate purposes, and that a mere postponement of payment did not impair the right.

Here we are not embarrassed with the setting aside of any reserve for the economical use of the corporation. The net surplus, after payment of current and prior dividends on prior preference and first preferred stock, increased steadily from and including the year 1921, until in 1924 it reached in amount $1,673,237. The second preferred stock earned in 1921 $139,998; in 1923 $300,000; in 1924 $300,000—total, $739,998. Of this sum there has been paid in dividends for 1923 $75,000; for 1924 $300,000—total, $375,000, leaving a balance of interest earned in the sum of $364,998. The second preferred stockholders are entitled to this amount out of the accumulated net surplus above indicated before the common stockholders are entitled to any dividend. It results that the dividend declared in favor of the second preferred stockholders for the year 1920 was irregular and unauthorized, and its payment will be enjoined. The dividends for the years 1921 and 1923 are valid, and the injunction as to these will be denied. The prayer for injunction against the payment of the dividend on the common stock will be sustained.

Although it is apparent that the accumulated surplus in the year 1924 is ample to pay all back earned interest on the preferred stock and the dividend declared on the common stock, it is imperative, under the conditions of the charter and the stock certificates, that dividends be declared out of the surplus for such earnings before any dividend can be set apart upon the common stock.