### STATE LIFE INS. CO. v. ALLEN.
### No. 7709.

Circuit Court of Appeals, Fifth Circuit.
Jan. 28, 1936.

Ralph W. Malone, of Dallas, Tex., Thos. B. Ramey, of Tyler, Tex., and Charles F. Coffin, of Indianapolis, Ind., for appellant.

Thomas Y. Banks, of Tyler, Tex., for appellee.

Before HUTCHESON, Circuit Judge, and DAWKINS and STRUM, District Judges.

DAWKINS, District Judge.

This suit was originally filed in the state court, but was removed to the Eastern District of Texas, on the ground of diverse citizenship. The jury was waived, and there was judgment for the plaintiff below. There is no dispute as to the facts which were found by the lower court, as follows:

"The court finds that on November 24th, 1920, and on June 1st, 1921, the plaintiff, W. L. Allen, and the defendant, The State Life Insurance Company, entered into two certain agency contracts, by the terms of which contracts, the said plaintiff was employed by said defendant to procure applications for policies of insurance on the lives of individuals, forwarding the same to said defendant for approval or disapproval, and to collect first year premiums and such other premiums as he might be authorized to collect, and that in addition to other compensation provided in said contracts, it was specifically agreed that plaintiff should receive a commission of five (5%) percent on gross renewal premiums received in cash by said company on all policies written by plaintiff, except non-participating policies, for a period of fifteen (15) years, but such commission on renewal premiums was chargeable with cost of collecting the renewal premiums not to exceed two (2%) percent of such commis-

sions. That both of said contracts further provided that if the plaintiff remained in the employ of the defendant, The State Life Insurance Company, for a period of three (3) years, and did not accept employment with any other life insurance company, then regardless of the termination of said contracts, plaintiff should nevertheless be entitled to receive commissions on renewal premiums as specified therein, unless and until the amount of business written by plaintiff in force on the books of said defendant company should be reduced to less than fifty thousand ($50,000) dollars. That on May 1st, 1930, the said plaintiff and the said defendant, The State Life Insurance Company, entered into a third agency contract, and also entered into a certain compromise agreement, and by the terms of said third agency contract, and said compromise agreement, the two previous agency contracts of November 24th, 1920 and June 1st, 1921, were abrogated and terminated, except as to renewal commissions payable to plaintiff thereunder, and as to such renewal commissions, it was provided that plaintiff should be paid the same in quarterly installments beginning April 1st, 1930. That the defendant, The State Life Insurance Company, has heretofore paid to the plaintiff all installments of renewal commissions under said contracts of November 24th, 1920 and June 1st, 1921, and, thereafter, said defendant failed and refused to pay the plaintiff the subsequent installments of renewal commissions due and accruing to him under said contracts. That from January 1st, 1931 to October 23rd, 1933, the defendant, The State Life Insurance Company, collected in cash gross renewal premiums in the amount of $49,805.38, on policies other than non-participating policies written by plaintiff, on which plaintiff was entitled to receive a commission of five (5%) percent under said contracts, less, however, two (2%) percent of such commissions for collection cost. That said plaintiff was in the employ of said defendant, working under said contracts of November 24th, 1920, and June 1st, 1921, for more than three (3) years. That he had never accepted employment with any other life insurance company, and that the amount of business written by him on the books of said company amounted to $417,640.00 on said date of October 23rd, 1933.

"That said contracts provide for the payment of such commissions on renewal premiums in installments, and the contrac-

tual obligation on the part of defendant company to pay the same is divisible, and plaintiff is now entitled to judgment against the defendant, The State Life Insurance Company, for the sum of two thousand four hundred ninety ($2,490.27) dollars and twenty-seven cents, for such commissions on renewal premiums accrued and unpaid up to October 23rd, 1933, less, however, two (2%) percent of such commissions (or $49.81) for collection costs."

There are three specifications of error, but they all present but one question, and that is as to whether or not the new agency contract and the compromise settlement entered into on the 1st day of May, 1930, referred to in the above-quoted findings of the lower judge, when fairly interpreted, gave Allen the right to claim the renewal commissions under the two previous agency contracts, regardless of whether he performed the one of May 1, 1930, or not. It is admitted that he breached the third contract.

The compromise agreement provided as follows: "That for, and in consideration of the said compromise and settlement of all claims, disputes, and accounting between the parties hereto, which each of said parties hereby releases, remises and quitclaims one to the other, and to each of them, and for the further consideration of the execution of the said new agency contract of even date herewith, creating the said W. L. Allen, District Manager at Tyler, Texas, and with the express and mutual understanding and agreement that no precedent is hereby created or imposed upon the said Parties of the First Part, the said parties hereto, mutually declare all claims, disputes, and accounting between each of them to be herewith compromised and settled in full, and each of said parties hereby releases, remises and quitclaims all matters of controversy, claims of whatsoever nature, kind or character, arising under or out of, or by virtue of said contracts above referred to, dated respectively November 24, 1920, and June 1, 1921, and herewith and hereby, therefore, declare said contracts to be null and void, and superseded by the said contract of even date herewith between the same parties, which creates W. L. Allen as District Manager at Tyler, Texas, *except that the said Parties of the First Part herewith expressly give, convey and grant unto the said W. L. Allen all 'renewals' on all business written and in force, since the dates of the* above mentioned contracts of November 24, 1920, and June 1, 1921, and arising under and out of, and by virtue of said contracts of said dates, with the mutual and express understanding, however, that said 'renewal' business is to begin April 1, 1930, and the first renewal check is to be paid to the said W. L. Allen about July 5, 1930." (Italics by the writer of this opinion.)

The pertinent provisions of the third or last agency contract are as follows: "Twelfth. It is mutually agreed that the execution of this contract by the parties hereto, abrogates, terminates and renders void all previous agency contracts made between said parties, *except as to renewal commissions provided for in such contract or contracts, and except as to first year's commissions, if any, that may now be due, or shall become due the second party on business heretofore written.*" (Italics by the writer of this opinion.)

There was also written on the margin of the last-mentioned agency contract the following: "All business written under the contracts of W. L. Allen bearing date of November 24, 1920, and June 1st, 1921, is included for renewal commissions under the terms and conditions of this contract."

Like the court below, we think the two contracts, to wit, the compromise and the last agency agreement, including the marginal provision, should be construed together. It appears to be conceded, but for this marginal clause, Allen would have been entitled to his renewals under the contracts of 1920 and 1921. The compromise clearly gives it to him, and the twelfth article of the last agency contract quoted above excepts from its abrogating provision "renewal commissions" under previous contracts. Can it be said that, having thus definitely and unconditionally reserved to the plaintiff these commissions, the parties immediately turned around and destroyed that purpose by the marginal notation? A construction which gives effect to all provisions should be adopted, if it is possible to do so. Had the insurance company intended that the payment of these renewal commissions should be dependent upon the performance by Allen of his obligations under the last agency contract, it could have very easily said so in words which could not be misunderstood. The marginal notation was evidently made as an afterconsideration, and we think the interpretation of it suggested by counsel for appellee in brief is correct, to wit, that un-

der the last agency contract, but for this marginal notation, if Allen remained in the service of the company for three years, unless the amount of business written thereunder amounted to $50,000 or more and was kept in effect, he would receive no commissions on renewals of such new business; whereas, if the insurance in effect under the prior contracts of 1920 and 1921 were taken into consideration and added to that under the one of 1930, he would be entitled to commissions on the new business if the two classes, that is, the new and the old, added together, amounted to $50,000 or more. Clause C of the new agency contract reads as follows:

"Clause C. Should the party of the second part discontinue service with The State Life Insurance Company or this contract be terminated by the party of the first part for any cause, all renewal commissions herein provided for shall immediately cease; provided always, That if the party of the second part for a period of three years from the date hereof and in all things shall comply with the terms of this contract and the same should, thereafter be terminated by either party, the party of the second part shall receive the renewal commission on business written prior to the termination of this contract by him and agents appointed by him, to which he would have been entitled had he remained in the service of the party of the first part. At any time, however, that the party of the second part shall enter the service of or accept any kind of employment from another life insurance company, all right of said party to renewal commissions under this contract shall cease and determine. It is further agreed that no renewal commissions shall be paid to the party of the second part after the amount of business in force on the books of the Company written by his agency prior to the termination of his contract shall be less than fifty thousand ($50,000) dollars."

The marginal clause says: "All business written under the (former) contracts is included *for renewal commissions* under the terms and conditions of this contract."

If it had been intended to include such business for all purposes, other than for renewal commissions, it seems that some such language as "all business written under the contracts of 1920 and 1921 shall be included in and governed by the terms of this contract" would have been employed, rather than the restricted verbiage referring only to renewal contracts. By construing the clause as contended by counsel for Allen, effect can be given to all provisions of both contracts and violence is done to none. The interpretation also seems reasonable and logical. See Collins v. Portland Electric Power Co. (D.C.) 7 F.(2d) 221; Victory Bottle Capping Machine Co. v. O. & J. Machine Co. (C.C.A.) 280 F. 753; Linde Dredging Co. v. Southwest L. E. Myers Co. et al. (C.C.A.) 67 F.(2d) 969.

The judgment appealed from is affirmed.